**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DANIEL WAYNE METZ, ) | |
| ) | CASE NO. 1:20-cv-2202 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | JUDGE DAVID A. RUIZ |
| KILOLO KIJAKAZI, ) | |
| *Acting Comm'r of Soc. Sec.*, ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. ) | |

Plaintiff, Daniel Wayne Metz (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

On September 25, 2018, Plaintiff protectively applied for DIB and SSI, alleging a disability onset date of August 20, 2018. (R. 12 PageID# 246-52, Transcript (Tr.) 179-185). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 55-124, 175-178). Plaintiff participated in the hearing on March 19, 2019, was represented by counsel, and testified. (Tr. 34-54). A vocational

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

expert (VE) also participated and testified. *Id*. On November 29, 2019, the ALJ found Plaintiff not disabled. (Tr. 17-33). On August 13, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 6-8). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14, R. 15).

Plaintiff asserts the following assignment of error: the ALJ's residual functional capacity (RFC) assessment is contrary to law and unsupported by substantial evidence because of the ALJ's alleged failure to properly evaluate the medical opinion evidence. (R. 14 PageID# 687, 697, 701).

## II. Evidence[2]

### A. Relevant Medical Evidence

1. **Treatment Records**

On October 27, 2017, prior to his August 20, 2018 alleged onset date, Plaintiff established treatment with psychiatric mental health nurse practitioner Anthony Shumway, PMHNP-BC (Tr. 387), who diagnosed Plaintiff with major depressive disorder, recurrent, moderate; attention-deficit hyperactivity disorder, predominantly inattentive type; insomnia, unspecified and generalized anxiety disorder. (Tr. 395). Nurse Shumway also prescribed a trial of mirtazapine and recommended Plaintiff continue with therapy, however, Plaintiff was hesitant due to his busy work schedule. *Id*. He prescribed new medications and/or doses in May 2018 (Tr. 397-98), June 2018 (Tr. 380-81), July 2018 (Tr. 381) and August 2018 (Tr. 381-82), concluding on

---

[2] While the Court has thoroughly reviewed the pertinent medical records and hearing testimony, this recitation of the evidence is intended only to serve as a succinct summary of Plaintiff's medical conditions, treatment, and opinions rendered that are directly germane to the assignment of error raised.

August 4, 2018, that Plaintiff could work without restrictions. (Tr. 382). He again adjusted Plaintiff's medications on August 25, 2018—five days after Plaintiff's alleged onset date—to address signs and symptoms of depression, anxiety and insomnia. (Tr. 382).

From September 30 to October 5, 2018, Plaintiff required inpatient hospitalization for passive suicidal ideation after drinking wine and then presenting with a depressed mood and constricted affect. (Tr. 296-99). Plaintiff also endorsed increased impulsivity, hostility, hopelessness, panic attacks, decreased concentration, decreased sleep and increased alcohol use. (Tr. 333). Plaintiff's treatment plan included group and individual therapy and medication titration. (Tr. 337-40). At discharge, Plaintiff reported his medication worked, he denied suicidal thoughts, his concentration was within normal limits, and he maintained goal-oriented thought processes with intact memory and fair insight and judgment. (Tr. 342).

On October 20, 2018, nurse Shumway noted Plaintiff endorsed "through the roof" anxiety and forgetfulness but otherwise endorsed 0/10 depression and denied crying spells, hopelessness, mood swings, mania, suicidal ideation or increased sleep. (Tr. 379). On December 8, 2018, Plaintiff presented as severely distracted and required frequent redirection and refocusing (Tr. 422), while on February 23, 2019, Plaintiff's mental status testing revealed mild to moderate impaired memory, abnormal psychomotor activity, poor attention/concentration, significant distractibility, and he reported depressed mood with increased marijuana use. (Tr. 417, 547). On March 23, 2019, nurse Shumway reintroduced Clonidine to target motor restlessness, insomnia, anxiety and ADHD, in addition to paroxetine, sertraline, Depakote ER and Clonazepam. (Tr. 560).

Beginning May 18, 2019, nurse Shumway provided monthly medication management, with continued medication changes after Plaintiff acknowledged he was doing "fine" until he could

not fill his Clonazepam. (Tr. 565, 572). Plaintiff endorsed "doing awesome" (Tr. 575) with "100% better" mood, and the ability to leave his home to see a show despite continued anxiety fluctuations, without panic attacks since taking all of his prescribed medications in June 2019. (Tr. 576).

On July 20, 2019, Plaintiff endorsed a decrease in crying spells, two minor panic attacks with medication, and depression rated at 3-4/10 since the last appointment. (Tr. 586). Nurse Shumway added a prescription for Vyvanse and, a month later, noted "[V]yvanse was very efficacious for ADHD s/sx; less restless in office today, marked improvement vs. last time. [F]inished 9 paintings since last time and better able to keep up w/ housework since [V]yvanse." (Tr. 597). Plaintiff continued to improve on Vyvanse and presented with markedly less fidgeting and less restlessness in September 2019. (Tr. 610).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On December 29, 2018, State agency consultative psychologist Michael E. Cremerius, Ph.D., opined Plaintiff had mild limitations in his ability to understand, remember or apply information and adapt and mange oneself with moderate limitations in the areas of interacting and relating with others as well as concentration, persistence or pace. (Tr. 61, 63). Dr. Cremerius opined Plaintiff had the cognitive capacity to understand and remember simple and detailed instruction, but complex instruction would be precluded. (Tr. 63, 76). Additionally, Plaintiff would be capable of performing simple and detailed tasks, but complex tasks would be precluded; he could engage in brief and superficial contact with co-workers and supervisors, but no contact with the public. (Tr. 64, 77). Plaintiff would be limited to adapting to only routine changes in a workplace setting, with no fast paced tasks with strict production quotas, but variable paced tasks with end of day production quotas would be acceptable. (Tr. 65, 78).

4

On March 5, 2019, State agency psychologist Carl Tishler, Ph.D., concurred with Dr. Cremerius' opinion. (Tr. 89, 91-93, 101, 104-106).

On March 23, 2019, nurse Shumway provided a "Mental Medical Source Statement" form. (Tr. 428-431, 437-40). He indicated he treated Plaintiff initially on October 23, 2017, and had 10 follow up visits through March 2018. (Tr. 428, 437). Nurse Shumway described Plaintiff's clinical findings as "extreme anxiety/worry; severe distractibility, poor focus, forgetful, severe agoraphobia w/ panic attacks, [decreased] self-esteem, insecurity, codependency, mood swings, irritability, [and] fear of leaving house." *Id*. In the category of "mental abilities and aptitudes needed to do unskilled work," nurse Shumway checked boxes indicating Plaintiff had "seriously limited, but not precluded" ability to carry out very short and simple instructions, ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions. *Id*. He also checked boxes indicating Plaintiff was "unable to meet competitive standards" in all other categories save one, and expounded on Plaintiff's limitations as follows:

> Significant distractibility, severe distress, anxiety & panic attacks when out in public, [decreased] self-esteem/confidence, extreme codependency on partner * * *, mood swings, irritability, very forgetful. Thought process circumstantial-tangential, second guesses himself, unable to effectively communicate or interact w/ customers or general public w/out significant distress, fear or getting upset, extremely low frustration tolerance, fearful of speaking up, unable to make phone calls or pay bills without assistance from life partner * * *. Unable to accept criticism without significant distress and worry.

(Tr. 429, 438). Nurse Shumway opined Plaintiff was unable to meet competitive standards with respect to the mental abilities and aptitudes needed to do semiskilled and skilled work or particular types of jobs, with the exception of being seriously limited, but not precluded from adhering to basic standards of neatness and cleanliness and travel in unfamiliar place, further noting Plaintiff "has been terminated from multiple jobs and/or

5

quit after few weeks." (Tr. 430, 439).

Nurse Shumway described Plaintiff as having a "low IQ or reduced intellectual functioning" based on ADHD and indicated Plaintiff's impairments would cause him to be absent "4-5 days/month at a minimum" and be off task greater than "50% of time." (Tr. 430). Lastly, nurse Shumway provided the following reasons as to why Plaintiff would have difficulty "working at a regular job on a sustained basis:"

> -History of confrontation with customers and supervisors during previous employment
> -History of morbid preoccupation & passive [suicidal ideation]
> -History of self-injurious behaviors (*i.e.* cutting)
> -Lacks insight as to how his [signs/symptoms], behaviors are perceived by others/ effect others

(Tr. 431, 440)

Over six months later, on October 19, 2019, nurse Shumway indicated he reviewed his March 2019 opinion and current treatment records and concluded "I am now able to affirm that the limitations, in my opinion, continue to be consistent with my patient's current level of functioning." (Tr. 436).

**B. Relevant Hearing Testimony**

During the administrative hearing, the ALJ posed the following hypothetical question to the VE:

> For the purpose of a hypothetical I'd ask you to assume an individual who is 28 years old, has a 12th grade education, therefore, he can read, write, and perform arithmetic, has a background as a collection's clerk. This individual does not have exertional limitations. Not exertionally (*sic*) he would be limited to performing routine tasks in a low stress environment. No fast paced, strict quotas or frequent duty changes, involving superficial interpersonal interactions with coworkers and supervisors, specifically no arbitration, negotiation or confrontational (sic) and no interaction with the general public as a job requirement.

(Tr. 49-50). The VE testified that such an individual could not perform his past relevant

6

work due to "contact," but could perform other jobs existing in significant numbers. (Tr. 50). When asked if the same individual could perform work if he was "[off] task at least 20 percent of the time" the VE testified such an individual could not work in the national economy.

Plaintiff's representative examined the VE and asked, "If we were to assume a hypothetical individual who is unable to have interactions with coworkers, supervisors or the general public in a work setting, would that induvial be able to maintain or retain employment?" The VE testified "No, sir. There's always going to be some contact with a supervisor. If you're talking about working in isolation, you're not going to be talking about an unskilled job." (Tr. 52).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

7

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent his from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent his from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

2. The claimant has not engaged in substantial gainful activity since August 20, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: depressive disorder, anxiety disorder with post-traumatic stress, and attention deficit hyperactivity disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and

      416.945) to perform a full range of work at all exertional levels (20 CFR 404.1567 and 416.967) but with the following nonexertional limitations: the claimant can perform routine tasks in a low-stress environment (no fast pace, strict quotas, or frequent duty changes) involving superficial interpersonal interactions with coworkers and supervisors (no arbitration, negotiation, or confrontation) and no interaction with the general public as a job requirement (20 CFR 404.1569a and 416.969a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on \*\*\*, 1991 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act from August 20, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-24, 27, 29).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a

whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo,* make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

In his only assignment of error, Plaintiff asserts that the ALJ's RFC determination[3] is contrary to law and unsupported by substantial evidence, because the ALJ failed to properly evaluate the medical opinion evidence of record. (R. 14 PageID# 694). Specifically, Plaintiff asserts the ALJ failed to give a sufficient explanation for rejecting limitations assessed by nurse Shumway. (R. 14, PageID# 697-701). In addition, Plaintiff asserts that the ALJ erred by failing to include the term "brief" with respect to the level of contact the hypothetical individual could

---

[3] The RFC is an indication of an individual's work related abilities *despite* their limitations. 20 C.F.R. § 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. 20 C.F.R. § 404.1546(c). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.

have with co-workers, because the State agency psychologists' opinions included such term. (R. 14, PageID# 701). The Commissioner responds that the ALJ satisfied the requirements of the new regulations in his analysis of opinion evidence and asserts that the decision is supported by evidence. (R. 15 PageID# 709).

1. **Nurse Shumway's Opinions**

Plaintiff filed his applications for DIB and SSI on September 25, 2018, *after* the Social Security Administration's new rules went into effect on March 27, 2017, concerning the weighing of medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c & 416.920c. According to Plaintiff, the ALJ failed to properly apply 20 C.F.R. § 404.1520c by failing to offer legally sufficient reasons to reject nurse Shumway's opinion. (R. 14, PageID# 696). Although Plaintiff contends nurse Shumway's opinion establishes disability (R. 14, PageID# 697), pursuant to the regulations in effect, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."

The Court, however, agrees that the ALJ must still "articulate in [the] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). Under the new regulations, an ALJ is required to articulate how she considered the factors of "supportability" and "consistency," which are the two "most important factors" in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The Agency "may, but [is] not required to, explain" how it considered the *other* factors in paragraphs (c)(3) through (c)(5). *Id.*

First, to the extent Plaintiff contends the ALJ was *required* to consider and explain the other

11

factors in paragraphs (c)(3) through (c)(5) because Plaintiff views the opinion from nurse Shumway as equally persuasive to the State agency opinions, Plaintiff offers no authority to support such a position. (R. 14, PageID# 696-97). Rather, the regulations require consideration of the (c)(3) through (c)(5) factors *only* if the ALJ—not the claimant—determines that two or more opinions are equally well supported and consistent with the evidence. The plain language of the regulations provide:

> (3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. **When we** [the Agency] ***find*** that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(3) (emphasis added). Here, the ALJ clearly did *not* find that nurse Shumway's opinion was equally persuasive with the State agency psychologists' opinions. As such, the ALJ was not required to articulate how he considered the other factors in paragraphs (c)(3) through (c)(5).

The ALJ considered the opinions from nurse Shumway, and found as follows:

> The undersigned is unpersuaded by the opinion of the claimant's Nurse practitioner, Mr. Shumway, who completed a checklist medical source statement on March 23, 2019, and reaffirmed that opinion in a subsequent letter dated October 19, 2019. (Exhibit 5F, 6F). This form indicated that the claimant was "unable to meet competitive standards" in all but a few work-related mental abilities, including cognitive, social, and adaptive functioning. The Nurse practitioner explained that these limitations were caused by significant distractibility, severe anxiety and panic attacks in public, decreased self-esteem, codependency, circumstantial thought processes, low frustration tolerance, poor communication, inability to accept criticism, poor focus, indecisiveness, and agoraphobia. (Exhibit 5F, p. 1-3). He opined further that the claimant would be off-task 50 percent of an average workday and would miss four to five days per month. (Exhibit 5F, p. 3). The support for this opinion was generally conclusory, and did not reference specific objective findings or mental status examinations in

>the contemporaneous treatment notes. This level of limitation is internally inconsistent with the Global Assessment of Functioning (GAF) contained within the form, indicating a score of 60 to 65, representing the lowest it had been in the past year. A GAF score within that range is typically consistent with only moderate symptomology or functional limitation, which is significantly divergent from the extreme limitations he assessed in specific work-related mental functions. Further, this opinion is inconsistent with the clinical findings contained in Mr. Shumway's progress notes, as well as the nature of the conservative, routine treatment plan he has continued to prescribe throughout this period. During the outpatient visit on the same date he completed this form, the claimant reported he was tolerating his medications well and the provider did not make any changes to address symptoms, which is inconsistent with this form, which suggests a vegetative, nonfunctional state. (Exhibit 8F, p. 76).[4] In the most recent visit notes in September 2019, the claimant reported some self-esteem issues and family conflict, but overall acknowledged efficacy of his medications, inconsistent with Mr. Shumway's October 2019 note suggestive of no progress in his treatment or change in his functioning over the course of the year. (Exhibit 8F, p. 69).
>
>Instead, the undersigned is persuaded by the prior administrative medical findings of the State agency psychological consultant, who had the opportunity to review the progress notes through February 2019, and concluded the claimant would be capable of performing a range of routine low-stress tasks and social interactions. (Exhibit 1A-2A, 5A-6A). The evidence received since the State agency psychologist last reviewed the record demonstrated subjective reports of benefit from his medication, and there was no evidence of additional exacerbations requiring further inpatient care. The claimant has treated on a routine outpatient basis since that time, with visits approximately once per month and no evidence of pursuing the therapy sessions prescribed by his Nurse practitioner.

(Tr. 26-27).

Plaintiff offers a generalized attack asserting the ALJ's analysis was deficient (R. 14 PageID# 696-700), but such argument is not persuasive as explained herein. When considering an opinion's supportability, "[t]he more relevant the objective medical evidence and supporting

---

[4] While the Commissioner's concedes that the ALJ's use of the phrase "vegetative, nonfunctional state" was an overstatement (R. 15, PageID# 713), the Court finds the ALJ's somewhat exaggerated characterization of nurse Shumway's opinion does not negate the decision's analysis.

13

explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ's discussion specifically discusses the lack of support and conclusory nature of nurse Shumway's opinions, the inconsistency of his opinions with his own treatment notes (including assessed GAF scores consistent with higher functioning), and the conservative treatment[5] regimen when compared to the highly restrictive limitations allegedly caused by Plaintiff's symptoms. (Tr. 26-27). The ALJ also referenced Plaintiff's statements regarding medication tolerance, all of which support the ALJ's analysis of the persuasiveness of the opinion. (Tr. 26-27). Prior to weighing nurse Shumway's opinion, the ALJ discussed the fact that "[t]he objective medical evidence and treatment history are inconsistent with the claimant's allegations of debilitating mental health symptoms." (Tr. 25). The ALJ's analysis does not run afoul of the standard set forth in 20 C.F.R. §§ 404.1520c(b) & 416.920c(b) concerning the consideration and articulation of medical opinions and prior administrative medical findings.

Plaintiff also contends that the ALJ engaged in impermissible cherry-picking of the record

---

[5] The ALJ had also noted the lack of evidence that Plaintiff attended psychotherapy in the record. (Tr. 26). He also observed that the lack of additional inpatient treatment since Plaintiff's one-week stay in September and October 2018, which suggested "a temporary exacerbation of [Plaintiff's] symptoms that occurred around the alleged onset date, rather than a persistent increase in depression, anxiety, and attention deficits." *Id*.

evidence (R. 14, PageID# 699), but that contention fails to furnish a basis for a remand, as the Sixth Circuit has found such allegations unavailing on appeal. *See, e.g., DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (agreeing with the district court that such an "allegation [of cherry-picking] is seldom successful because crediting it would require a court to re-weigh record evidence") (citing W*hite v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")). To the contrary, it is the responsibility of the ALJ to resolve the conflicts in the record where there are conflicting opinions resulting from essentially the same medical data. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence"). Plaintiff's suggestion that the ALJ only cited "waning" treatment notes out of records that demonstrate waxing and waning symptoms (R. 14 PageID#: 699-700) mischaracterizes the decision, which also addresses Plaintiff's self-esteem issues, family conflict, and self-reported limitations, but weighed those facts in light of the record as a whole. (Tr. 27).

Plaintiff further contends the ALJ's "description of Plaintiff's treatment as 'conservative' is unreviewable" and commensurate with the ALJ creating his "own standard." (R. 14 PageID# 700). Plaintiff cites no authority in support. *Id*. Conversely, the Sixth Circuit Court of Appeals has observed that an ALJ's characterization of mental health treatment as conservative was supported by the record where the claimant required only one hospitalization and was generally treated with psychotropic medications and therapy. *See, e.g., Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 669 (6th Cir. 2009); *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (noting that a "conservative treatment approach suggests the absence of a disabling condition").

Plaintiff's arguments with respect to nurse Shumway's opinions fail to furnish a basis for remand.

**2. State Agency Consultants Dr. Cremerius and Dr. Tishler**

In a few brief sentences, Plaintiff further contends the ALJ erred by failing to include all of the mental limitations assessed by the State agency consultants Dr. Cremerius and Dr. Tishler, despite the decision finding their prior administrative medical findings to be persuasive. (R. 14 PageID# 701, citing Tr. 27). Specifically, Plaintiff points of that State agency psychologists opined that Plaintiff was "limited to **brief** and superficial contact with co-workers and supervisors…." (R. 14, PageID# 701; *see also* Tr. 64, 92) (emphasis added). Plaintiff takes issue with the ALJ's omission of the term "brief" from the RFC, which limited contact with co-workers and supervisors to superficial. (R. 14, PageID# 701). Further, Plaintiff asserts the ALJ failed to give any explanation for why he omitted the "brief" limitation. *Id*.

First, it is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See, e.g., Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. App'x 464, 2003 WL 23140056, at *1 (6th Cir. 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050, 118 S. Ct. 1370, 140 L. Ed. 2d 518 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant). Plaintiff's brief fails to cite any authority on point, and fails to offer any explanation as to how the omission of the term "brief" was prejudicial. Plaintiff fails to identify any statute, regulation, or case law suggesting that the term "brief" has any specialized meaning within the social security context. As such, the Court considers the argument waived.

16

Second, even considering the fragment of an argument on its merits, the Court finds no basis for remand. It is well-settled that an ALJ is not required to adopt a medical opinion verbatim or adopt the limitations wholesale even where such an opinion was accorded great weight. *See, e.g.*, *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x 267, 275 (6th Cir. 2015) (citation omitted); *accord Legette v. Comm'r of Soc. Sec.*, 2022 WL 958130, 2022 U.S. Dist. LEXIS 59077, at *26 (N.D. Ohio Feb. 25, 2022), adopted by 2022 WL 952636 (N.D. Ohio, Mar. 30, 2022).

It is true that both the RFC and the hypothetical posed to the VE did not include a limitation to only brief interactions, but the Court cannot discern any prejudice from its omission. The RFC did limit Plaintiff to only superficial interaction with coworkers and supervisors and no interaction with the general public. (Tr. 24). Although the Court acknowledges that a "brief" interaction sounds as if it is more akin to a time-based limitation while "superficial" has more of a qualitative connotation, superficial interactions, by their very nature, are *brief*, fleeting, and cursory. A limitation to superficial interaction, therefore, excludes interactions that would require more than brief interaction, as superficial interaction excludes thoroughgoing, in-depth, comprehensive, or detailed interactions. The limitation to superficial interaction reasonably encompasses a prohibition against interactions that go beyond brief interactions. Further, the Court is unaware of any authority suggesting that the term "brief" is a term of art that has a particular or specific meaning in the social security context. Certainly, the parties have not drawn the Court's attention to any authority suggesting otherwise.

Finally, although it may have been preferable for the ALJ to either include the "brief" limitation or explicitly state why he determined such a limitation was unnecessary or redundant, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a

perfect opinion unless there is reason to believe that remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *accord Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (*quoting NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)); *Mabrey v. Comm'r of Soc. Sec.*, 1:13-cv-555, 2015 WL 556435 at *5 (S.D. Ohio Feb. 10, 2015), *adopted by* 2015 WL 1412205 (Mar. 26, 2015).

Therefore, Plaintiff's sole assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 26, 2022